UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHEN B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:21 CV 169 JMB |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On September 19, 2017, plaintiff Stephen B. filed an application for disability insurance benefits, Title II, 42 U.S.C. §§ 401 *et seq*. (Tr. 186-192), and supplemental security income, Title XVI, 42 U.S.C. §§ 1381, *et* seq. (Tr. 193-198). In both applications, he alleged that he became disabled on December 6, 2016 because of a stroke. (Tr. 82, 217). After plaintiff's applications were denied on initial consideration (Tr. 82-87), he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 88-89).

Plaintiff and counsel appeared for a hearing on June 10, 2019. (Tr. 29-51). Plaintiff testified about his disability, daily activities, functional limitations, and past work. The ALJ also received testimony from vocational expert Susan Johnson. After the hearing, the ALJ propounded interrogatories to Delores Gonzalez, a different vocational expert. The ALJ provided Ms.

Gonzalez's *curriculum vitae* and responses to the interrogatories to plaintiff's counsel and admitted those documents into the record after receiving no response from counsel.  (Tr. 10).  The ALJ issued a decision denying plaintiff's applications on October 22, 2019.  (Tr. 10-23).  The Appeals Council denied plaintiff's request for review on December 11, 2019.  (Tr. 1-3).  Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II.  Evidence Before the ALJ

### A.  Disability and Function Reports and Hearing Testimony

Plaintiff was born in October, 1972 and was 43 years old on the alleged onset date.  (Tr. 186).  He has one child and lived with his sister and mother at the time of his application.  (Tr. 194).  He completed high school in 1991.  (Tr. 218).  From 2002 to 2004 he was a cleaner in a car dealership, and from 2007 to 2016 he held a full-time job as a cutting team leader for a tree cutting company.   (Tr. 218).[1]

Plaintiff's sister, Sharon Fott, assisted in the completion of plaintiff's September 23, 2017 Function Report.  (Tr. 223-238).  That report indicated that he suffers from visual impairments, decreased motor skills and memory, and an inability to articulate thoughts.  (Tr. 223).  He could manage his personal hygiene, do laundry, clean, and make food, take care of a dog, and he saw his then 12-year-old daughter on the weekends (but she managed herself).  (Tr. 224-225).  However, he needs reminders to shower, eat, and clean, he forgets to take his medication, he is unable to sleep without a sleep aid, he cannot manage his financial affairs, and he has little interaction with persons other than family.  (Tr. 225-227).  Plaintiff's medications included Metoprolol and Amlodipine for hypertension, Atorvastatin for high cholesterol, and Trazodone for insomnia.  (Tr. 232, 246).

---

[1] Plaintiff had significant income in 2001, 2005, and 2006, but it is unclear how he was employed.  (Tr. 202).

2

Plaintiff testified at the June 2019 hearing that he can feed himself and take care of his hygiene but struggles with preparing meals and traversing stairs in his split-level house. (Tr. 35). The stroke affected the right side of his body; he lost peripheral vision in his right eye, his right side feels "asleep" and "tingly", he has trouble writing (he is right-handed), he struggles lifting a gallon of milk, and has fallen. (Tr. 39-41). He has trouble sleeping and cutting the grass. (Tr. 43-44). He also has trouble paying attention, following instructions, and remembering things. (Tr. 44). After his stroke, he cannot play sports and just watches TV. (Tr. 45-46). His daughter stays with him most weekends but she takes care of herself; he drives to pick up his daughter even though his doctors told him not to drive. (Tr. 43-46).

Vocational expert Susan Johnson testified that plaintiff's past work as a tree trimmer was classified as heavy. (Tr. 47). Ms. Johnson was asked to testify about the employment opportunities for a hypothetical person of plaintiff's age, education, and work experience who was able to perform sedentary work, but was limited to lifting, carrying, pushing and pulling ten pounds occasionally and less than ten pounds frequently, sitting for six hours, and standing and walking for two hours out of an eight-hour workday. The individual could also frequently handle and finger things, only occasionally use ramps and stairs, occasionally balance, but use no ropes, ladders, scaffolds, hazardous machinery, or motor vehicles, and could not be in unprotected heights. He would also be limited to simple, routine, repetitive tasks, limited changes in workplace setting, no assembly line work, occasional interaction with supervisors and co-workers, with no interaction with the public. Finally, he would not be able to do jobs that required peripheral vision on the right side. (Tr. 47). According to Ms. Johnson, such an individual would be unable to perform plaintiff's past work. (Tr. 47). And, in her opinion, such a hypothetical individual could not perform other sedentary, unskilled work. (Tr. 48).

3

In particular, Ms. Johnson testified as follows:

Q: Is there any work in the national economy for that hypothetical individual?

A: No, Your Honor.

Q: All right.  And what limitation, in your opinion, eliminates work? . . . .

*\*\*\**

A: All of them together.  The no peripheral vision to the right, that's significant, but all of them together.

Q:  So, at the sedentary level, is it your opinion that the visual limitation at sedentary I guess disqualifies competitive employment?

A:  Yes, You Honor.   In addition to the simple, repetitive, you know few changes in the work setting.  That goes together with the simple, but with everything together, that's --- that would just significantly reduce the sedentary, unskilled base in my opinion.

*\*\*\**

Q: I guess is that a limitation according to the DOT or is that just on your professional opinion?

A: That's on my professional opinion from doing job placements for [INAUDIBLE].

*\*\*\**

Q:  And Ms. Johnson, I guess the testimony you've given today is consistent with both the DOT and the SCO?

A: Yes, Your Honor.

(Tr. 47-50).

Ms. Johnson testified that if the peripheral vision limitation was removed, there are other jobs available in the national economy, such as addresser, document preparer, and ampule sealer.[2]

After the hearing, the ALJ requested a second opinion from Vocational Expert Delores Gonzalez using the same hypothetical individual identified above (which included the peripheral

---

[2] Ms. Johnson testified that these jobs all fit in the sedentary classification.

4

vision limitations). (Tr. 297-301). In response, Ms. Gonzalez stated that an individual could perform sedentary jobs available in the national economy that included addresser, document preparer, and tube operator. (Tr. 309).

### B. Medical and Opinion Evidence

The Court notes that the administrative transcript contains voluminous records of plaintiff's treatment following the September 6, 2016 stroke which includes significant treatment and medical provider interactions in September and October, 2016 and more limited interactions thereafter. (Tr. 317-1453). The details of those interactions are not necessary for an evaluation of this appeal. Plaintiff does not dispute the ALJ's findings with respect to his medical evidence, nor has he filed a reply to defendant's statement of the record (Doc. 19). Considering the limited argument and lack of dispute as to the nature of plaintiff's medical condition, treatment, and functional capacity, the Court will adopt the ALJ's statement, as supplemented by defendant.

By way of summary, plaintiff was admitted to the Mercy Hospital Emergency Room on September 6 after being found unresponsive. (Tr. 540). After a battery of tests, he was transferred to the Intensive Care Unit (ICU) for further evaluation and management. (Tr. 692). After an MRI, he was diagnosed with "multiple bilateral acute posterior circulation infarcts, likely cardio-emoblic," i.e., a stroke (Tr. 571, 692). He was transferred to the Neurology Department on September 17, 2016 (Tr. 692) and discharged from the Neurology Department on September 21, 2016, with a good prognosis, no restrictions on weight bearing, and a good rehabilitation potential. (Tr. 17, 698-699). His discharge diagnosis included bilateral posterior circulation infarcts (stroke),

"right visual field cut", decreased balance, and cognitive dysfunction, among other conditions. (Tr. 539).

Thereafter, he was admitted to the Mercy's Rehabilitation Hospital on September 21, 2016 and remained there until October 12, 2016. (Tr. 527, 529). He slowly improved with occupational, speech, and physical therapies. (Tr. 534-535). He began outpatient therapies on October 13, 2016 and continued until the end of 2016. (Tr. 331-437). His neurocognitive functioning was assessed by Dr. Victoria Herberger on December 9, 2016, and he was found to have a mild to moderate degree of cognitive dysfunction. (Tr. 364). He was alert and oriented to date and time, he had a largely stable gait, adequate hearing, right visual cut, normal attention, normal speech with a slightly reduced rate and mild difficulty articulating, and normal insight/judgment. (Tr. 263). He received no further neurological treatment or rehabilitation in 2017 but was seen by his primary care doctor, Dr. Mark Zacharjasz. During those visits, his physical examinations were generally normal (Tr. 1408-1446); however, he reported balance/gait problems, continuing vision problems, and trouble remembering things. (Tr. 1417).

He underwent a follow-up neurological examination with Dr. Herberger on February 7, 2018. (Tr. 1447-1453). He was found to have a "mildly abnormal cognitive profile that was most notable for deficits in some aspects of higher order cognition." (Tr. 1450). Dr. Herberger recommended additional therapies to help with return to driving, stumbling, and to determine what type of work he may engage in given his cognitive and visual deficits. (Tr. 1451).

### III.  Standard of Review and Legal Framework

To be eligible for disability benefits, plaintiff must prove that he is disabled under the Act. See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite h[is] limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four

that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy.  Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole.  Pate-Fires, 564 F.3d at 942.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  Id.  Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (same).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must

consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

### IV. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. (Tr. 10-27). The ALJ found that plaintiff met the insured status requirements through December 31, 2021 and had not engaged in substantial gainful activity since September 6, 2016, the alleged onset date. (Tr. 12-13). At step two, the ALJ found that plaintiff had the severe impairments of status post cerebral vascular accident, hemianopia, and hemisensory deficit. The ALJ determined at step three that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ specifically addressed listing 2.03 (loss of peripheral vision), 11.04 (cerebral vascular accidents), and 12.02 (neurocognitive impairments). (Tr. 13). Plaintiff does not challenge the ALJ's assessment of his severe impairments or the determination that plaintiff's impairments do not meet or equal a listing.

The ALJ next determined that plaintiff had the RFC to perform sedentary work, except with only occasional ramps and stairs; no ladders, ropes, or scaffolds, occasional balancing, frequent handling and fingering bilateral, no hazardous machinery, no unprotected heights, and no jobs requiring peripheral vision. (Tr. 15-16). He was limited to simple, routine, repetitive tasks,

not at a production rate, with few changes in setting, no tandem tasks, only occasional interactions with supervisors and coworkers, and no contact with the general public. (Tr. 16). In assessing plaintiff's RFC, the ALJ summarized plaintiff's medical record, written reports, work history, and his testimony regarding his abilities, conditions, and activities of daily living. (Tr. 16-21). Plaintiff does not challenge the ALJ's assessment of his RFC.

At step four, the ALJ concluded that plaintiff was unable to return to his past relevant work. (Tr. 21). His age on the alleged onset date placed him in the "younger individual" category. He had at least a high school education and was able to communicate in English. Id. The transferability of job skills was not an issue because using the Medical-Vocational Rules as a framework supported a finding that plaintiff was not disabled whether or not she had transferable job skills. The ALJ found at step five that someone with plaintiff's age, education, work experience, and residual functional capacity could perform other work that existed in substantial numbers in the national economy, namely as an addresser, document preparer, and tube operator.[3] (Tr. 22). Thus, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act from September 6, 2016 through October 22, 2019 -- the date of the decision. (Tr. 23).

## V. Discussion

Plaintiff's sole argument is that the ALJ failed to articulate why she rejected the testifying VE's opinion in favor of the non-testifying VE's opinion.

It is well established that "[t]he Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." Guilliams v. Barnhart, 393 F.3d 798, 804 (8th

---

[3] In doing so, the ALJ relied on Ms. Gonzalez's report. The ALJ did not mention Ms. Johnson's testimony in her opinion.

Cir. 2005). "A hypothetical question is properly formulated if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." Id. (citation and quotation marks omitted). There is no dispute in this case that the ALJ posed an identical hypothetical question that included impairments supported by substantial evidence, including the limitation on peripheral vision, to both VEs.

It is equally well established that the ALJ cannot rely on a VEs testimony that conflicts (or appears to conflict) with information contained in the Dictionary of Occupational Titles ("DOT"), a reference book that lists the functional requirements for jobs available in the national economy, without addressing and resolving the conflict. Stanton v. Comm'r, Soc. Sec. Admin., 899 F.3d 555, 558 (8th Cir. 2018); See SSR 00-4p, 2000 WL 1898707, *2 ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."). If the ALJ does not identify and resolve the conflict between the VE's testimony and the DOT, the testimony "is not substantial evidence to support a denial of benefits." Stanton, 899 F.3d at 558. In this case, both Ms. Johnson and Ms. Gonzalez provided opinions arguably consistent with the DOT.[4] In particular, Ms. Johnson testified generally that her opinion was consistent with the DOT however her opinion regarding peripheral vision was based on her experience and not the DOT. (Tr. 49). Merely testifying that an opinion is consistent with the DOT is insufficient; and, if the ALJ relied on Ms. Johnson's testimony, she was required to inquire further. See Moore v. Colvin, 769 F.3d 987, 989-

---

[4] Plaintiff has presented no evidence or argument, either at the administrative level or before this Court, that Ms. Gonzalez's opinion is inconsistent with the DOT.

11

990 (8th Cir. 2014). The ALJ did not inquire further, as such Ms. Johnson's testimony did not represent substantial evidence upon which the ALJ could have based her decision.

Instead of inquiring further, the ALJ elected to acquire a second opinion and ignore the first. Plaintiff has presented no argument, precedential case authority,[5] or reference to a regulation that disallows such a procedure nor has he demonstrated that Ms. Gonzalez's testimony cannot be substantial evidence supporting the commissioner's decision. In this matter, it was apparent that Ms. Johnson's testimony could not be credited unless the ALJ resolved a potential conflict between her testimony and the DOT. The undersigned has found no case authority that *requires* an ALJ to resolve a conflict between the DOT and a VE's testimony that is not relied upon in lieu of simply acquiring opinion evidence that does not conflict with the DOT. Accordingly, the failure to rely on such evidence or to address the evidence in the decision does not necessitate remand. See Sykes v. Bowen, 854 F.2d 284, 287 (8th Cir.1988) (affirming denial of benefits even though ALJ failed to explicitly discuss why the judge rejected the report of a vocational expert; it was apparent why the report should be rejected as the report was prepared three years after the claimant's insured status expired). Finally, even if the ALJ erred in not addressing Ms. Johnson's testimony, the mere fact that a different conclusion could have been reached does not necessitate remand. See Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (stating that "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision" (quoting Goff v. Barnhart,

---

[5] Plaintiff relies solely on Clements v Colvin, 2013 WL 5231491 (N.D. Miss. 2013). In that case, two VEs testified at two separate hearings as to a near identical hypothetical; one indicated that the plaintiff could perform no work and the other testified that plaintiff could perform sedentary work. The ALJ adopted the later testimony. The court found that the ALJ failed to resolve an obvious conflict between the relied-upon VE's testimony and the DOT. The court further found that that ALJ failed to attempt to resolve the conflict between the two competing VE opinions. That case is distinguishable from this case because the ALJ did not rely on an VE opinion that may be in conflict with the DOT. And, to the extent that the ALJ did not address the obviously rejected VE's opinion, such an error is harmless. See Sloan v. Saul, 933 F.3d 946, 951 (8th Cir. 2019) (noting that if the agency's reasoning is clear, a deficiency in opinion-writing is insufficient to set aside the agency's conclusion).

421 F.3d 785, 789 (8th Cir. 2005)); See also Jelinek v. Bowen, 870 F.2d 457, 460 (8th Cir. 1989) (stating in dicta that if the record merely contained conflicting opinions of two vocational experts, the ALJ's finding would be upheld).

\* \* \* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of May, 2022.